UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AWILDA GOMEZ

                                                Plaintiff,            07 CIV. 9296 (CLB)(GAY)

       -against-

VILLAGE OF SLEEPY HOLLOW, DETECTIVE JOSE QUINOY in his individual and official capacity, POLICE OFFICER ELDRYK EBEL in his individual and official capacity, POLICE OFFICER MIKE GASKER in his individual and official capacity, LIEUTENANT BARRY CAMPBELL in his individual and official capacity, LIEUTENANT GABRIEL HAYES in his individual and official capacity, SERGEANT WOOD in his individual and official capacity, CHIEF OF POLICE JIMMY WARREN in his individual and official capacity, and POLICE OFFICERS JOHN DOES 1 – 4,

                                               Defendants.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW

                                          MIRANDA SOKOLOFF SAMBURSKY
                                          SLONE VERVENIOTIS LLP
                                          Attorneys for Defendants
                                          240 Mineola Boulevard
                                          Mineola, New York 11501
                                          (516) 741-7676
                                          Our File No.: 07-157

Of Counsel:
    Michael A. Miranda
    Jennifer E. Sherven

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………………...…..1

STATEMENT OF FACTS……………………………………………………………….3

ARGUMENT……………………………………………………………………………..6

POINT I

    DETECTIVE QUINOY, OFFICER GASKER
    AND OFFICER EBEL ARE PROTECTED
    BY QUALIFIED IMMUNITY………………………………………………….6

        FALSE ARREST/IMPRISONMENT
        & MALICIOUS PROSECUTION……………………………………….7

        EXCESSIVE FORCE…………………………………………………..8

POINT II

    CHIEF WARREN, SGT. HOOD, LT. HAYES, AND
    LT. CAMPBELL ARE PROTECTED BY QUALIFIED
    IMMUNITY……………………………………………………………………..10

CONCLUSION…………………………………………………………………………13

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987) ... 6, 7

Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995). ... 6, 7

Cosby v. City of White Plains, 2007 WL 853203 (S.D.N.Y. Feb. 9, 2007) ... 11

Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) ... 8

Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989) ... 8, 9

Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982) ... 6

Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir.1998) ... 8

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) ... 6

Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) ... 8

Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995) ... 9

Lewis v. United States, 388 F. Supp.2d 190, 195 (S.D.N.Y. 2005) ... 6

Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir.2002) ... 6

Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) ... 6

Malley v. Briggs, 106 S.Ct. at 1096) ... 7, 10

Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721 (1995) ... 6

O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir.1993) ... 7

Robison v. Via, 821 F.2d 913 (2d Cir. 1987) ... 10, 12

Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) ... 7

Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ... 7

Singleton v. City of Newburgh, 1 F.Supp.2d 306, 313 (S.D.N.Y. 1998) ... 9

Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981) ... 10

Thompson v. Tracy, 2008 WL 190449 *5 (S.D.N.Y. Jan. 17, 2008) .................................. 9, 10, 11

Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) ................................................................. 8

## **Statutes**

Fed. R. Civ. P. 12(c), .................................................................................................................. 13
42 U.S.C. §§ 1983 and 1985 .................................................................................................. 1, 10

## PRELIMINARY STATEMENT

The individual defendants, DETECTIVE JOSE QUINOY, POLICE OFFICER ELDRYK EBEL, POLICE OFFICER MIKE GASKER, LIEUTENANT BARRY CAMPBELL, LIEUTENANT GABRIEL HAYES, SERGEANT WOOD, CHIEF OF POLICE JIMMY WARREN and POLICE OFFICERS JOHN DOES 1 – 4[1], submit this Memorandum of Law in support of their motion to dismiss this action based on the doctrine of qualified immunity.

Plaintiff's complaint arises out of her October 18, 2006 arrest by the Sleepy Hollow Police Department for resisting arrest and obstruction of governmental administration on October 17, 2006 during an altercation between her estranged husband, Mario Gomez, and the police. The complaint alleges violations of plaintiff's constitutional rights regarding excessive force, false arrest, false imprisonment, and malicious prosecution. Additionally, plaintiff alleges *Monell* claims against the Village for the failure to train, conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and state law claims sounding in assault and negligence.

As fully set forth herein, plaintiff's claims against the individual defendants are without merit and barred by the doctrine of qualified immunity. In this regard, assuming, *arguendo*, plaintiff's version of the relevant events, her qualified immunity deposition testimony conclusively establishes that the arrest of plaintiff was supported by probable cause. Thus, it follows that that the officers involved in plaintiff's arrest, Detective Quinoy, Officer Ebel and Officer Gasker, are entitled to qualified immunity in the instant suit.

Additionally, Chief Warren, Lt. Campbell, Lt. Hayes, and Sgt. Hood (s/h/a Sgt. Wood) are also entitled to qualified immunity with respect to the subject arrest as plaintiff's deposition testimony confirmed that not only were they not involved in either the altercation with plaintiff's husband or in her arrest.

---

[1] Although the caption names the John Doe defendants, they have never been identified or served.

Each individual defendant deserves his own qualified immunity analysis in the decision on this motion. Their qualified immunity fates do not rise and fall as one.

## STATEMENT OF FACTS[2]

Plaintiff's own testimony confirms that Detective Quinoy had probable cause to arrest plaintiff. On October 17, 2006, plaintiff was at a neighbor's apartment when she received a telephone call from her husband, Mario Gomez, informing her that he received a telephone message from Detective Quinoy; plaintiff later heard this message and admits that Detective Quinoy's voice was calm in the message. See Exh. C, at pp. 76, 79-80, 82-83.[3] Plaintiff then received a telephone call from her daughter, Bridgette, who was home with plaintiff's husband, informing her that Mario spoke with Detective Quinoy about Haydee, their other daughter, and that Mario got dressed to go see Detective Quinoy. See Exh. C at pp. 84-86. Plaintiff saw her husband in the parking lot, did not talk to him, but followed him to the police station in her car. See Exh. C at pp. 88. Plaintiff admits that she does not know the substance of her husband's conversation with Detective Quinoy or whether he threatened Detective Quinoy over the telephone. See Exh. C at p. 94.

When plaintiff arrived at the police station, Detective Quinoy and another officer, whom she now believes to be Officer Gasker, were outside on the sidewalk. See Exh. C at p. 95. Plaintiff did not park her car; when she got to the police station, she left it running, with its lights on, in the middle of the street. See Exh. C at p. 91, lines 6-9, p. 96, lines 1-9. Plaintiff heard Detective Quinoy say to her husband, "It's police. I got to arrest you." See Exh. C at p. 96. Plaintiff testified that her husband held Detective Quinoy around his body. See Exh. C at p. 98-99. During this, plaintiff was screaming "Stop it, stop it" and "Help, Help" and ran into the police station to get help. See Exh. C at p. 100-01.

---

[2] For purposes of this motion only, plaintiff's factual allegations are deemed true.
[3] All exhibits are those annexed to the Sherven Declaration.

3

When she returned outside of the police station, her husband and Detective Quinoy were still fighting and she admits that she touched and held Detective Quinoy's shirt and said "Jose, stop it, stop it." See Exh. C at p. 101-02. Detective Quinoy then allegedly held plaintiff's jacket and threw her between her car and the floor, but she did not fall to the ground. See Exh. C at p. 102; p. 105, lines 14-17; p. 111, line 25 – p. 112, line 4. When asked whether Detective Quinoy picked her up and threw her, plaintiff testified "He moved very hard to me to my car." See Exh. C at p. 112, lines 5-8. As a result of this, plaintiff's left rib touched the car. See Exh. C at p. 106. Significantly, she did not break a rib. See Exh. C at p. 107, lines 2-3.

Thereafter, the incident involving plaintiff's husband came to an end and he was placed in a police car and taken into the police station. See Exh. C at p. 108. Plaintiff went inside the police station and then went to the hospital. See Exh. C at p. 114.

At approximately 4:00 a.m., plaintiff returned to the police station and was placed under arrest by Detective Quinoy. See Exh. C at p. 118. At that time, plaintiff signed a statement which she identified at her deposition. See Exh. C at p. 123, lines 3-5; p. 126-27. At her deposition, plaintiff reviewed the statement and testified that she understood what was written in the statement. See Exh. C at p. 129, lines 8-10. A copy of the plaintiff's sworn Statement of Admission is annexed to the Sherven Declaration as Exhibit D.

Plaintiff's Statement reflects that plaintiff ran after her husband because her daughter Bridgette told her that he was on the telephone yelling and screaming. See Exh. D. Plaintiff's statement further reflects that she tried to park her car and that when she looked up, "I saw Mario fighting with the police" and that she then ran screaming into the police station. See Exh. D. Her statement further reflects that plaintiff "grabbed Jose [Quinoy] by the shirt, asking him to stop, screaming" and that Quinoy grabbed her and threw her against her car. See Exh. D.

4

During this incident, plaintiff was not tasered and, other than Detective Quinoy (who she testified pushed her in the direction of her car), no police officer had any physical contact with her. See Exh. C at p. 103, lines 14-15; p. 111, lines 8-10. Plaintiff admits that Officer Ebel did not touch her. See Exh. C at p. 158, lines 4-9. She also admits that Officer Gasker did not touch her. See Exh. C at p. 164, lines 7-11. Plaintiff did not tell any of the police officers that she was hurt. See Exh. C at p. 166, lines 19-21.

Plaintiff admits that the other individually-named defendants were not present outside of the police station. Chief Warren did not touch her or her husband and was not even present during the incident outside of the police station. See Exh. C at p. 173, 176. Plaintiff is suing Chief Warren because he allegedly ignored her when she was at the hospital. See Exh. C at p. 177-78. Plaintiff admitted that she does not know Lt. Hayes and has never heard of him. See Exh. C at p. 87, lines 7-15. Likewise, plaintiff admitted that (1) she does not know Lt. Campbell, and (2) in his investigation into the subject incident, on advice of her criminal attorney, plaintiff refused to speak to Lt. Campbell. See Exh. C at p. 136, lines 16-23; p. 138, lines 17-24. Plaintiff admits that Lt. Campbell never touched her or her husband and that she is suing him because "he don't care about me." See Exh. C at p. 170-71. Plaintiff also admits that Sgt. Hood did not touch her or her husband. See Exh. C at p. 172-73.

## ARGUMENT

## POINT I

### DETECTIVE QUINOY, OFFICER GASKER AND OFFICER EBEL ARE PROTECTED BY QUALIFIED IMMUNITY.

As a rule, law enforcement officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. See Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721 (1995). Even where the right was clearly established at the time of the infringement, a public official is entitled to qualified immunity if he "reasonably believed that his actions did not violate plaintiff's rights . . . even if that belief was mistaken." See Lewis v. United States, 388 F. Supp.2d 190, 195 (S.D.N.Y. 2005) (citing Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir.2002); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)). The second prong requires concrete proof that an individual's motives were tainted with discriminatory intent. See Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995). It is the second prong that protects the various individual defendants at bar.

The availability of the qualified immunity defense turns on the "objective legal reasonableness" of the allegedly unlawful action, "asserted in light of the legal rules that were 'clearly established' at the time it was taken." See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982)). Even if the constitutional question is clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." See Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). The relevant question is whether the official believed his or her conduct to

6

be lawful. See Anderson, 483 U.S. at 641. A reasonable, competent official must be able to determine in advance that the actions were unconstitutional. Id. at 640. If reasonably competent officials would have taken the challenged action or could disagree on the issue, the defendant is entitled to qualified immunity. See Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092 (1986). In Malley, the Supreme Court held that qualified immunity protected all officials except those who knowingly violate the Constitution or those who are plainly incompetent. Id.

The Blue v. Koren test has required the application of a "heightened standard," which requires the proponent of the constitutional claim "to provide specific allegations or direct evidence of the required state of mind" to successfully oppose summary judgment based upon the defense of qualified immunity. "Particularized evidence of improper motive may include expressions by the officials involved regarding their state of mind, circumstances suggesting in substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." Id. at 1084.

The doctrine of qualified immunity is "an entitlement not to stand trial or face other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) (internal citations omitted). As set forth herein, plaintiff has not and cannot defeat the qualified immunity afforded to defendants Detective Quinoy, Officer Gasker and Officer Ebel.

### FALSE ARREST/IMPRISONMENT & MALICIOUS PROSECUTION[4]

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (citing O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d

---

[4] Plaintiff's underlying criminal case has not yet been resolved and is currently pending trial.

Cir.1993)). An arresting officer is entitled to qualified immunity from suit on a claim for arrest without probable cause if (1) it was objectively reasonable for the officer to believe probable cause existed or (2) officers of reasonable competence could disagree on whether probable cause existed. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997). "Arguable probable cause" is sufficient to confer the defense of qualified immunity. Id. at 102-03 (internal citations omitted).

Even assuming plaintiff's version of the relevant events, plaintiff's own testimony confirms that there was probable cause to arrest plaintiff. Plaintiff admits that she interfered with an ongoing altercation outside of the police station involving her husband, and that she touched and held Detective Quinoy's shirt, thereby interfering with his arrest of plaintiff's husband. See Exh. C, at p. 101-02. Plaintiff also admits that the other officers who were present during this incident, specifically defendants Officer Gasker and Officer Ebel, did not touch her in any way. See Exh. C, at pp. 158, 164.

Where, as here, there is probable cause for an arrest, an officer is afforded not only qualified immunity, but an absolute defense to liability. See Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (probable cause defeats a claim for false arrest/imprisonment); Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (probable cause defeats a claim for malicious prosecution).

## EXCESSIVE FORCE

With regard to plaintiff's excessive force claim, courts examine the following factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect resisted or attempted to evade arrest by flight. See Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989); Hemphill v. Schott,

141 F.3d 412, 418 (2d Cir.1998). "To prevail on a motion for summary judgment in an excessive force case, the evidence must show that 'no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice.'" See Singleton v. City of Newburgh, 1 F.Supp.2d 306, 313 (S.D.N.Y. 1998) (citing Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995)). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Thompson v. Tracy, 2008 WL 190449 *5 (S.D.N.Y. Jan. 17, 2008) (citing Graham, 409 U.S. at 396).

In the case at bar, the only force alleged by plaintiff is that during an altercation between her husband and the police, after she touched and held onto Detective Quinoy's shirt, Detective Quinoy held her jacket and pushed her in the direction of her car. See Exh. C, at p. 101-02, 105. Under these circumstances, plaintiff can hardly argue that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." See Singleton, 1 F.Supp.2d 306.

Moreover, even if a jury were to conclude that Detective Quinoy's use of force was objectively unreasonable, plaintiff still has to prove that the individual defendants were "personally involved in order to recover damages against [them] for the use of excessive force." Thompson, supra, at *6. Plaintiff admits that the other officers who were present during this incident, Officer Gasker and Officer Ebel, did not touch her -- in fact the only officer who touched her was Detective Quinoy. See Exh. C, at p. 103, 111, 158, 164.

Based on all of the aforementioned, it is respectfully submitted that the claims against Detective Quinoy, Officer Gasker, and Officer Ebel must be dismissed under the doctrine of qualified immunity.

## POINT II

### CHIEF WARREN, SGT. HOOD, LT. HAYES, AND LT. CAMPBELL ARE PROTECTED BY QUALIFIED IMMUNITY.

The claims against Police Chief Warren, Sgt. Hood, Lt. Hayes, and Lt. Campbell are subject to the same "qualified immunity" analysis set forth in Point I, supra. Significantly, plaintiff cannot refute that Chief Warren, Sgt. Hood, Lt. Hayes, and Lt. Campbell were not present during the incident involving plaintiff's husband outside of the police precinct on October 17, 2006 and were not involved in plaintiff's arrest and subsequent prosecution. Thus, they are entitled to qualified immunity for plaintiff's false arrest, false imprisonment and malicious prosecution claims. Furthermore, even if a jury were to conclude that the police officers' collective use of force was objectively unreasonable, plaintiff still has to prove that the individual defendants were "personally involved in order to recover damages against [them] for the use of excessive force." Thompson v. Tracy, 2008 WL 190449 at *6 (S.D.N.Y. Jan. 17, 2008).

Additionally, police officers are afforded qualified immunity from suit under 42 U.S.C. § 1983 for their investigative acts. See Robison v. Via, 821 F.2d 913 (2d Cir. 1987) (citing Malley v. Briggs, 106 S.Ct. at 1096)); Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981). Here, plaintiff's deposition testimony reveals that she has no actionable claim against Chief Warren, Sgt. Hood, Lt. Hayes, and Lt. Campbell and therefore, dismissal is warranted.

Plaintiff admits that Detective Quinoy was the only police officer that had any physical contact with her whatsoever. See Exh. C, at p. 111. Plaintiff admits that Chief Warren was not present during the incident involving her husband and cannot refute that he was not involved in plaintiff's arrest in any manner; moreover, she admits that Chief Warren did not touch her in any

manner. See Exh. C, at p. 173, 176. Likewise, plaintiff admits that Sgt. Hood did not touch her and plaintiff cannot refute that Sgt. Hood was not present during the incident involving plaintiff's husband outside of the police station and that he was not involved in plaintiff's arrest. See Exh. C, at p. 172-73. Plaintiff cannot refute that Lt. Hayes was not present during the incident involving plaintiff's husband outside of the police station and that he was not involved in plaintiff's arrest; in fact, plaintiff admits that she does not know Lt. Hayes and never heard of him. See Exh. C, at p. 87. Plaintiff cannot refute that Lt. Campbell was not present during the incident involving plaintiff's husband outside of the police station and that he was not involved in plaintiff's arrest; in fact, plaintiff admits that she does not know Lt. Campbell, that he never touched her and that her attorney advised her not to speak with him about his investigation. See Exh. C, at p. 136, 138, 170-71.

As such, it follows that plaintiff's Complaint fails to allege any basis whatsoever for a claim against these individual defendants. See e.g. Thompson, 2008 WL 190449; Cosby v. City of White Plains, 2007 WL 853203 (S.D.N.Y. Feb. 9, 2007). There is no evidence which would establish that defendants Chief Warren, Sgt. Hood, Lt. Hayes or Lt. Campbell were involved in the incident involving plaintiff's husband outside of the police station or in plaintiff's arrest and subsequent prosecution or that they personally used excessive force against plaintiff. Moreover, assuming *arguendo* that plaintiff was subjected to excessive force, there is no evidence that defendants Chief Warren, Sgt. Hood, Lt. Hayes or Lt. Campbell actually observed this use of force.

Qualified immunity was designed to prevent what has happened here: the harassing disruption of a defendant's performance of public responsibilities occasioned by an overeager plaintiff wishing only to load up a legal caption with names.

11

Therefore, it is respectfully submitted that the claims against Chief Warren, Sgt. Hood, Lt. Hayes and Lt. Campbell must be dismissed under the doctrine of qualified immunity.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that this Court issue an Order, pursuant to Fed. R. Civ. P. 12(c), dismissing this action as against the individual defendants under the doctrine of qualified immunity and for such other and further relief as this Court deems just, proper and equitable.

Dated: Mineola, New York
April 16, 2008

        MIRANDA SOKOLOFF SAMBURSKY
        SLONE VERVENIOTIS LLP
        Attorneys for Defendants
        240 Mineola Boulevard
        Mineola, New York 11501
        (516) 741-7676
        Our File No.: 07-157

        By: _____
           Michael A. Miranda (MAM-6413)
           Jennifer E. Sherven (JS-4195)

TO:    JOSEPH A. MARIA, P.C.
        Attorneys for Plaintiff
        301 Old Tarrytown Road
        White Plains, New York 10603
        (914) 684-0333
        File No.: 01-2031