UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X

AWILDA GOMEZ,                                    No. 07 Civ.9296(CLB)

               Plaintiff(s),          ECF Case

     -against-

VILLAGE OF SLEEPY HOLLOW, DETECTIVE JOSE QUINOY,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, POLICE
OFFICER ELDRYK EBEL IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY, POLICE OFFICER MIKE GASKER IN HIS
INDIVIDUAL AND OFICIAL CAPACITY, LIEUTENANT BARRY
CAMPBELL IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
LIEUTENANT GABRIEL HAYES IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY, SERGEANT WOOD IN HIS INDIVIDUAL
AND OFFICE CAPACITY, CHIEF OF POLICE JIMMY WARREN
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND POLICE
OFFICERS JOHN DOES 1-4,

               Defendant(s).
--------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Submitted by:

### JOSEPH A. MARIA, P.C.

By:S/_____
Frances Dapice Marinelli (FM2152)
Attorneys for Plaintiff
AWILDA GOMEZ
301 Old Tarrytown Road
White Plains, New York 10603
Tel: 914-684-0333
File No.01-2031(dj)

TABLE OF CONTENTS

Page

Table of Authorities.......................................    ii

Preliminary Statement......................................    1

Statement of Facts.........................................    2

Questions Presented........................................    8

Memorandum of Law..........................................    9

POINT I - THE DEFENDANTS ARE NOT ENTITLED TO
          QUALIFIED IMMUNITY...............................    9

Conclusion.................................................    18

ii

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

Anderson v. Creighton, 483 U.S. at 641, 107 S.Ct. at 3041                  12

Cerrone v. Brown, 246 F.3d 194,202(2d Cir.2001)                           12

Coons v. Casabella, No. 00-9503, 2002 WL 483410(2d Cir. 2002)             12

Dwares v. City of New York, 985 F.2d 94(2d Cir. 1992)                     16

Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991),
cert. denied, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d
902(1992)                                                                 12

Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1965, 104 L.Ed.2d
443 (1989)                                                               9,10

Harlow v. Fitzgerald, 457 U.S. 800 (1982)                                 9

Hernandez v. Keane, 341 F.3d 137 (2d Cir. 2003)                          16

Johnson v. Newburgh Enlarged School District, 239 F.3d
246, 250 (2d Cir. 2001)                                                   9

LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998)                      9

Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir.1997)                          12

Lennon v. Miller, 66 F.3d 416,420(2d Cir. 1995)                          14

Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092,1096,
89 L.Ed.2d 271 (1985)                                                     17

Mickle v. Morin, 297 F.3d 114 (2d Cir.2002)                              11

Monell v. Dep't of Soc. Services, 436 U.S. 658(1978)                     15

O'Bert v. Vargo, 331 F.3d 29,36(2d Cir.2003)                              9

O'Neill v. Krzeminski, 839 F. 2d 9, 11-12 (2d Cir.1988)                  11

<u>PRELIMINARY STATEMENT</u>

Plaintiff Awilda Gomez submits this Memorandum of Law in opposition to defendants' motion to dismiss on the ground of qualified immunity.

Defendants are not entitled to the defense of qualified immunity.

Plaintiff's right to be free of unreasonable force was clearly established at the time of this incident and plaintiff's right to be free from unlawful seizure was clearly established at the time of her arrest.

Based on the facts in the record viewed most favorable to the plaintiff, officers of reasonable competence could not disagree that the conduct of the defendants violated plaintiff's clearly established constitutional or statutory rights.

Plaintiff Awilda Gomez adopts the arguments set forth by Plaintiff Mario Gomez in his case against defendants herein arising from the same incident.

Based on the facts as presented in this record and the facts as presented by plaintiff Mario Gomez, none of the defendants are entitled to qualified immunity on plaintiff's claims of excessive force, false arrest, false imprisonment and malicious prosecution as a matter of law.

1

## STATEMENT OF FACTS

1.    On October 17, 2006, at approximately 10:40 p.m.,
defendant Jose Quinoy (hereinafter "Quinoy") threw plaintiff Awilda
Gomez to the ground, causing her to sustain injuries that required
hospital treatment.  Ex. 1; Ex. 3, 114; Ex. 4, 89, 94-98; Ex. 5; Ex.
6.  Plaintiff is a thin woman, 5'4" tall and weighing 110 lbs.  Ex.
J; Ex. N.

2.    Prior to October 17, 2006, Awilda Gomez knew Quinoy's
family.  She and Quinoy were friends, invited each other to parties,
and visited each other at their respective houses.  Ex. 1, 31-; 66-
67.

3.    On October 17, 2006, while Awilda Gomez was at her
friend's home, she received a phone call from her husband, Mario
Gomez, who told her that Quinoy had called him and left him a
message that he wanted to talk to him.  Ex. 1, 76-78. Awilda Gomez
later heard Quinoy's message that he had left on Mario Gomez's
phone.  Ex. 1, 82-83.

4.    Awilda Gomez then received a phone call from her daughter,
Bridget who told her that Quinoy had called Mario Gomez a second
time and told him to go to defendant Village of Sleepy Hollow Police
Department located at 28 Beekman Avenue in the Village of Sleepy

2

Hollow, County of Westchester, State of New York, which he did. Ex. 1, 84:3-25.

5.    Awilda Gomez saw Mario in the parking lot and followed him to the police station.  She did not speak to him at this time.  Ex. 1, 88;

6.    When she arrived at the police station, Awilda Gomez saw defendant police officers already outside and assaulting her husband, Mario Gomez.  There were approximately five police officers beating up Mario Gomez.  Ex. 1, 92-95; Ex. 4, 133-134; Ex. 6; see also, Ex. 8.  Independent witness Eulalia Guzman observed approximately five police officers in a struggle with a man. Independent witness Debralyn Press observed approximately five figures in a circle around a man who was being beaten by the others while he was on the ground in front of Sleepy Hollow headquarters on October 17, 2006.  Debralyn Press actually called the police. Ex. 12.

7.    Awilda Gomez ran into the police headquarters and asked the officer at the desk, defendant Lt. Hayes, to get some help to stop the defendants from beating her husband. Ex. 1; Ex. 3, 99:20-21; Ex. 4, 117:12-23, 119:15-21, 120:12-15.

8.    Defendant Lt. Hayes did not respond and refused to take any action.  Ex. 6.

9.   Awilda Gomez went back outside and yelled "stop", "stop". They continued to fight with Mario Gomez, hitting him and shooting him with tasers several times.  Ex. 3, 103-104; Ex. 4, 126-145.

10.   Awilda Gomez went into the police station a second time pleading for help but Hayes did nothing.  Ex. 4, 116:10-18, 121:7-14.

11.   Awilda Gomez held her friend, Quinoy, by his arm and asked him to stop.  He did not respond but instead picked her up and threw her into her car and to the ground.  Ex. 1; Ex. 3, 101:13-18, 112; Ex. 4, 84-85, 93-94; Ex. 5.

12.   She got up and was in pain.  Police officers from the Tarrytown police department arrived and pulled Quinoy away from Mario Gomez.  Ex. 4, 90-92; 149.  Her husband was then handcuffed and taken into the Sleepy Hollow police station.  Awilda Gomez went into the police department headquarters and waited with her children to learn some information about her husband.  She waited for approximately one hour at headquarters.  Ex. 3, 112-114; Ex. 4, 93-96.

13.   Although she sat in Sleepy Hollow police headquarters for approximately one hour immediately following the incident, plaintiff Awilda Gomez was not arrested at that time.  Ex. 10.

14.   Gomez was in pain and the pain worsened.  Shortly before midnight, her daughter, Haydee Gomez, took her to Phelps Memorial

4

Hospital for medical treatment for her injuries.  She arrived at the hospital eight minutes after midnight, on October 18, 2006.  Ex. 3, 114; Ex. 4, 96-99; Ex. 5.

15.  Gomez was recuperating from recent hysterectomy surgery. She suffered a contusion of the left ribs and was given pain medication.  While at the hospital, she saw Quinoy and defendant Chief of Police Jimmy Warren speaking to one another.  She was discharged at approximately 3:36 a.m. on October 18, 2006.  Ex. 4, 94; Ex. 5.

16.  Awilda Gomez then went back to the Village of Sleepy Hollow police department to pick up her husband's car.  Defendant Sergeant Wood, supervisor at the time, told her to come back the next day. Ex. 3, 157; Ex. 6.

17.  Wood asked Awilda Gomez if she wanted to make a complaint, to which she responded "yes."  Ex. 6.

18.  Gomez then heard the voice of Quinoy behind closed doors. She heard him say "open the door".  Quinoy then came into the lobby area, approached her, took her arms, put them behind her, and then handcuffed her behind her back, telling her that now that she had a medical record, he had no other choice but to arrest her to cover for himself.  It was approximately 4:00 a.m.  Sergeant Wood permitted Quinoy's misconduct to continue.  Ex. 1; Ex. 3, 122, 157; Ex. 6.

5

19. At the police station, Quinoy, like a friend, talked to plaintiff, told her not to worry, and prepared a written statement in English for plaintiff to sign, speaking to plaintiff in Spanish and told her to sign it. She did not read it although she signed it. Ex. 3, 121-123; Ex. 7. The Miranda Warning was in Spanish, though. She was detained for over an hour. Ex. 9; Ex. 18. Although Quinoy claimed to be injured, the records show that he was back at headquarters and remained there at least until 5:00 a.m. Ex. 18.

20. Defendant Quinoy does not state who arrested plaintiff and relates as follows: "at about 0330hrs, Awilda Gomez came to police headquarters to find out about Gomez's vehicle…she was taken into custody and charged…". Ex. 8.

21. Quinoy's statement is silent as to his returning to police headquarters after claiming injury and experiencing "severe pain" after the incident. Ex. 8.

22. On January 5, 2007, Lt. Campbell of the Sleepy Hollow Police Department sent a report by Memo to Defendant Chief Jimmy Warren regarding his inquiry of the arrests of Mario Gomez and plaintiff Awilda Gomez. The report was initiated as a result of "rumors that have circulated on the street and having been contacted several times by the journal news of said rumors." Ex. 13.

23. Lt. Campbell admits that "Detective Quinoy may have erred in judgment in meeting Mr. Gomez outside headquarters with Officer

6

Gasko, knowing that Mr. Gomez was angry and infuriated…". There is no mention of Quinoy throwing plaintiff Awilda Gomez to the ground or of her arrest four hours after the occurrence.  Ex. 13.

24.  The FBI is presently investigating the allegations of brutality and misconduct by Village of Sleepy Hollow police officers herein named as defendants.  Ex. 17.

## QUESTIONS PRESENTED

QUESTION I:    WHETHER THE DEFENDANTS ARE ENTITLED TO
               QUALIFIED IMMUNITY?

ANSWER I:      THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
               IMMUNITY.

MEMORANDUM OF LAW

## THE DEFENDANTS ARE NOT ENTITLED TO
## QUALIFIED IMMUNITY

Qualified immunity shields government officials from liability for civil damages when the performance of their discretionary functions "did not violate clearly established law" which a reasonable person would have known." Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250 (2d Cir. 2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982). However, an official is not entitled to qualified immunity where the "'contours of the right [were] sufficiently clear"' such that a reasonable person would understand what he is doing violates that right. Id. at 250-251, quoting LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).

This case is replete with genuine issues of material fact that preclude defendants from entitlement to qualified immunity.

Here, it is clearly established that people have a right to be free of unreasonable force under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1965, 104 L.Ed. 2d 443 (1989). In unreasonable force cases, unlike other cases, the qualified immunity inquiry is the same as the inquiry made on the merits. O'Bert v. Vargo, 331 F.3d 29,36(2d Cir.2003). The objective reasonableness test will not be met if, on an objective basis, it is obvious that no reasonably competent officer would have concluded

9

his use of force was necessary.  Id. at 37.  If the determination turns on which of two conflicting stories best captures what happened on October 17, 2006 and October 18, 2006, the Court cannot grant a judgment to defendants based upon qualified immunity, rather the issue of whether the force was necessary should be decided by a jury.

Without warning and while she was pleading with him to stop, plaintiff Awilda Gomez was picked up and thrown to the ground by defendant Jose Quinoy.  Ex. 1; Ex. 5; Ex. 7.  Quinoy claims otherwise, stating that he ordered her several times to let go of him, plaintiff and pushed her off of him.  Ex. 8; See also, Ex. 15. Defendant Police Officers Ebel and Hayes make no mention of plaintiff Awilda Gomez, however they were present.  Ex. 16.

The Fourth Amendment governs a claim that excessive force was used in connection with an arrest.  See Graham, supra at 386,388. In determining whether excessive force was employed, the question is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.  Id. at 397.  Where circumstances are in dispute, as here, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant in an action under § 1983 on an excessive use of force claim is not entitled to judgment as a matter

10

of law on a defense of qualified immunity.  Mickle v. Morin, 297 F.3d 114 (2d Cir.2002).

Plaintiff suffered injury as a result of the force used by Quinoy and required medical attention.  Ex. 5.

Any reasonably competent police officer would know that he should not pick up plaintiff by the jacket and throw her to the ground under the circumstances herein.  No reasonable police officer could possibly have thought it was necessary to use the degree of force Quinoy used against plaintiff.

Defendant Jose Quinoy is not entitled to qualified immunity.

Defendants Gasko and Ebel were present at the scene and did nothing to prevent Quinoy's unlawful force against plaintiff.

Further, a police officer can be held liable under 42 U.S.C. § 1983 for not intervening in a situation where excessive force is being used by another officer.  See O'Neill v. Krzeminski, 839 F. 2d 9, 11-12 (2d Cir.1988).  Viewing the facts pleaded as true, defendants Gasko (s/h/a Gasker), Ebel, and Hayes are not entitled to qualified immunity.  Liability will attach only when 1) the officer had a realistic opportunity to intervene and prevent the harm; 2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and 3) the officer does not take reasonable steps to intervene. Id.

Although Quinoy claims to have been injured, even going to the hospital, he was back at the police station within hours.  See Ex.

11

7, Ex. 8, Ex. 9.  Quinoy went to the hospital to validate his actions.  He was back on the job when he issued the charges he against plaintiff Awilda Gomez four hours later.

A person has a clearly established right not to be arrested or prosecuted without probable cause.  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991), cert. denied, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902(1992).

An officer who makes an arrest lacking probable cause is entitled to qualified immunity only if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed.  Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir.1997); Anderson v. Creighton, 483 U.S. at 641, 107 S.Ct. at 3041.  This mistaken but objectively reasonable belief has recently been referred to as arguable probable cause.  See, e.g., Cerrone v. Brown, 246 F.3d 194,202(2d Cir.2001); Coons v. Casabella, No. 00-9503, 2002 WL 483410 (2d Cir. 2002).  From the view of the record most favorable to the plaintiff, a jury could not conclude that arguable probable cause existed in the instant case. Cerrone, supra; see Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092,1096, 89 L.Ed.2d 271 (1985).

Plaintiff Awilda Gomez remained at Sleepy Hollow police headquarters for approximately one hour waiting for information about her husband.  She was not arrested.  Rather, she was handcuffed and arrested approximately four hours after the incident

12

occurred by defendant Quinoy.  Ex. 6; Ex. 10.  She was charged with resisting arrest and obstruction of governmental administration in the 2nd degree.

Even though Quinoy took her statement and filled in her Miranda Warning form, the arresting officer, according to defendants' records, was defendant Gasko.  Ex. 10.

It is undisputed that plaintiff was discharged from Phelps Memorial Hospital at 3:36 a.m. on October 18, 2006.  Ex. 5. Defendants report her as being fingerprinted on October 18, 2006 at 12:00 a.m.  Ex. 11.

The question is whether officers of reasonable competence could have disagreed about whether arguable probable cause existed to arrest plaintiff Awilda Gomez four hours after the incident when she voluntarily returned to police headquarters to inquire about her husband's car on the charges of resisting arrest and obstruction of governmental administration.  The defendants' own records do not support the charge of resisting arrest or obstruction of governmental administration. Ex. 8; See also, Ex. 18.

Viewing the facts most favorably to the plaintiff, a jury could determine that she was arrested because she was going to make a complaint and had been injured, requiring hospital treatment, and Quinoy was covering himself.  A rational trier of fact could conclude that Quinoy did a quick about-face, claiming injury and going to the hospital as a cover, particularly since he went back to

13

work, returned to police headquarters and was still there four hours later to arrest plaintiff, when she walked into headquarters voluntarily, without any resistance.

It is shown that it was not objectively reasonable for defendants to believe their actions were "lawful at the time of the challenged conduct." Lennon v. Miller, 66 F.3d 416,420 (2d Cir. 1995). Objective reasonableness is established where "officers of reasonable competence could disagree" about whether or not defendants' actions were legal. Id. The question, therefore, is whether any reasonable police officer could have believed that the conduct about which plaintiff testified would not have violated a citizen's clearly established rights.

According to plaintiff's testimony and sworn affidavit, she went to Quinoy who was a friend, trying to stop him from beating up her husband. She tried to get help from the defendants Ebel and Hayes but they ignored her. Quinoy threw her to the ground, injuring her. The melee ended when police from a different jurisdiction arrived at the scene. She was not arrested at that time. While she was medically treated for her injuries at Phelps Memorial Hospital emergency room, of which defendants were aware because Quinoy and Chief Jimmy Warren were there, she returned to police headquarters. Quinoy then heard that she wished to make a complaint and he arrested her on a charge of resisting arrest without probable cause as shown by the facts in this record and on a

14

charge of obstruction of governmental administration which is
unsubstantiated by the facts in this record.  She was unreasonably
detained.  She was fingerprinted, photographed, signed a Miranda
Warning form written in Spanish and filled out by Quinoy, and signed
a statement also written by Quinoy but in English.  An FBI probe is
ongoing regarding the policies of the Sleepy Hollow police
department and the misconduct of its police officers, defendants
herein.

Clearly, there are genuine issues of material fact regarding
the implementation of an official municipal policy for purposes of
Monell v. Dep't of Soc. Services, 436 U.S. 658(1978).  There is
evidence in the record sufficient to raise a question as to whether
a pattern of conduct exists to establish municipal liability.
Further discovery will evince additional evidence to support
plaintiff's claim that defendant Village of Sleepy Hollow and its
supervisors, defendants Warren and Wood, deliberately maintain a
policy or custom of failure to train its police officers.   Monell,
supra.

Under § 1983, a supervisor is liable when is can be shown that
a policy or custom exists that sanctions conduct amounting to a
constitutional violation, or allowing such a policy or custom to
continue.  As the record herein shows, together with the facts as
stated by plaintiff Mario Gomez, there is a question of fact as to
Defendant Warren's liability in condoning Quinoy's known behavior

15

and permitting it to continue.  Furthermore, there is a question as
to whether Chief Warren failed to act on information indicating that
unconstitutional acts were occurring.  It is possible, based on the
facts, that a jury could find a pattern of use of excessive force
that was not addressed by Chief Warren.  See Hernandez v. Keane, 341
F.3d 137 (2d Cir. 2003).  Defendants Warren and Wood are not
entitled to qualified immunity as a matter of law.

    The report of defendant Campbell raises a question as to the
existence of a policy or custom of failing to train its police, and
the failure to act on information regarding Quinoy's past use of
excessive force.  His report and notes are inadequate and raise a
question as to the diligence used in seeking the truth of what
occurred on October 17, 2006 and October 18, 2006.  As a matter of
law, defendant Campbell is not entitled to qualified immunity.

    An official's entitlement to qualified immunity is based on a
review of the total or aggregate conduct of that particular
official.  Dwares v. City of New York, 985 F.2d 94(2d Cir. 1992).
In this action, it is submitted that each action taken by each
defendant was not objectively reasonable and in judging the merits
of plaintiff's claims based upon the totality of each of the
individual defendants, this Court should find that the defendants
are not entitled to qualified immunity as a matter of law.

    The record shows that defendants' conduct violated clearly
established constitutional rights of the plaintiff and that it was

16

not objectively reasonable for them to believe their acts did not violate those rights – that they knowingly violated the law.   The Supreme Court in Malley v. Briggs, 475 U.S. 335, 341 (1986) analogized the purpose of having qualified (as opposed to absolute) immunity for police officers to that of the exclusionary rule.   Both serve to deter police misconduct.   "A police officer who knows his misconduct is actionable may be motivated to reflect" before committing it. Id. at 342.

Defendants are not entitled to qualified immunity as a matter of law.

17

CONCLUSION

FOR THE FOREGOING REASONS, Plaintiff respectfully requests that Defendants' motion to dismiss on the ground of qualified immunity be denied in its entirety, together with such other and further relief which the Court deems just and reasonable.

Dated: White Plains, New York
       June 26, 2008

                              Respectfully submitted,

                              **JOSEPH A. MARIA, P.C.**

                              By: _S/_____
                              Frances Dapice Marinelli (FM2152)
                              Attorneys for Plaintiff
                              AWILDA GOMEZ
                              301 Old Tarrytown Road
                              White Plains, New York 10603
                              Tel: 914-684-0333
                              File No. 01-2031(dj)

18