UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------X

AWILDA GOMEZ,                                    07 Civ. 9296 (FPS)

        Plaintiff,                    **MEMORANDUM DECISION AND ORDER**
                           **CONVERTING MOTION TO DISMISS**
v.                                     **INTO MOTION FOR SUMMARY JUDGMENT**
                      **AND GRANTING IN PART AND DENYING**
VILLAGE OF SLEEPY HOLLOW,              **IN PART DEFENDANTS' MOTION**
DETECTIVE JOSE QUINOY in his          **FOR SUMMARY JUDGMENT**
individual and official capacity,
POLICE OFFICER ELDRYK EBEL in his
individual and official capacity,
POLICE OFFICER MIKE GASKER in his
individual and official capacity,
LIEUTENANT BARRY CAMPBELL in his
individual and official capacity,
LIEUTENANT GABRIEL HAYES in his
individual and official capacity,
SERGEANT WOOD in his individual
and official capacity,
CHIEF OF POLICE JIMMY WARREN in his
individual and official capacity,
and POLICE OFFICERS JOHN DOES 1-4,

        Defendants.

---------------------------------------------X

I. <u>Procedural History</u>

      The plaintiff's complaint arises out of the October 17, 2006 arrest of her husband, Mario Gomez, by the Sleepy Hollow Police Department for aggravated harassment, resisting arrest, assault, and obstruction of governmental administration.  The complaint alleges violations of the plaintiff's constitutional rights, including claims of excessive force, false arrest, false imprisonment, and malicious prosecution.  Additionally, the plaintiff alleges claims against the Village of Sleepy Hollow ("Village") pursuant to <u>Monell v. New York City Dept. of Soc.</u>

<u>Servs.</u>, 436 U.S. 658 (1978).   These claims include failure to train, conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and state law claims sounding in assault and negligence.[1]

On April 17, 2008, the individual defendants, Officer Jose Quinoy ("Officer Quinoy"), Officer Eldryk Ebel ("Officer Ebel"), Officer Mike Gasker ("Officer Gasker"), Lieutenant Barry Campbell ("Lieutenant Campbell"), Lieutenant Gabriel Hayes ("Lieutenant Hayes"), Sergeant Hood,[2] and Chief of Police Jimmy Warren ("Chief Warren"), filed a motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   The individual defendants seek to dismiss this action against them on the ground of qualified immunity.   In addition to the notice of motion (Doc. 12), the individual defendants filed a declaration of Jennifer E. Sherven in support of the motion to dismiss (Doc. 13), as well as a memorandum of law (Doc. 14).

In response, on June 27, 2008, the plaintiff filed an affidavit of Frances Dapice Marinelli (Doc. 18), as well as a memorandum of law in opposition to the motion to dismiss (Doc. 19).

---

[1] The plaintiff's husband, Mario Gomez, commenced a separate action against the Village of Sleepy Hollow and several of its police officers, asserting similar claims as his wife.   The individual defendants in Mario Gomez's case have also moved to dismiss on qualified immunity grounds.   On May 19, 2009, Judge Stephen C. Robinson issued an order consolidating these cases. Although this Court issues two separate opinions addressing the motions to dismiss, it is aware that the cases are consolidated for discovery purposes.

[2] Sergeant Hood is incorrectly named in the caption as Sergeant Wood.

On August 18, 2008, the individual defendants filed a reply memorandum of law in further support of their motion to dismiss the action based on the doctrine of qualified immunity.  This pending motion is now ripe for review.  For the reasons set forth below, this Court finds that the individual defendants' motion to dismiss, which is converted into a motion for summary judgment, must be granted in part and denied in part.

## II.   Facts[3]

On October 17, 2006, the plaintiff received a phone call from her husband, Mario Gomez, while visiting a friend's home.  Mario told her that Officer Quinoy had called him and left a message stating that he wanted to talk.  The plaintiff then received a phone call from her daughter, Bridget, who told her that Officer Quinoy had called a second time and told Mario to meet him at the Sleepy Hollow Police Station.

Upon arriving home, the plaintiff saw her husband in the parking lot and followed him in her car to the police station. When she arrived at the station, she saw approximately five police officers assaulting her husband.  The plaintiff then ran into the

---

[3]For purposes of deciding this motion to dismiss, which is converted into a motion for summary judgment, this Court adopts, for the most part, the facts as set forth in the complaint and the plaintiff's response to the motion for summary judgment.  This Court notes that the plaintiff argues that none of the defendants are entitled to qualified immunity based on the facts as presented by plaintiff Mario Gomez.  (Resp. to Mot. for Summ. J. 1.) However, the facts presented by the plaintiff differ from those set forth in her husband's complaint.  This Court decides this motion on the facts presented in Awilda Gomez's complaint alone.

police station seeking assistance.  She spoke to Lieutenant Hayes and explained that her husband was currently being assaulted outside.  Lieutenant Hayes allegedly ignored her requests for help.

After her unsuccessful attempt to seek help in the police station, the plaintiff returned to the scene of the assault and shouted at the officers to stop fighting.  The plaintiff watched the officers continue to hit and taser her husband.  She then went inside the police station a second time seeking help from Lieutenant Hayes, who again did nothing.  When the plaintiff went back outside, she grabbed Officer Quinoy by the arm and demanded that he stop, and in response he picked her up and threw her against her car and to the ground.

Shortly thereafter, several members of the Tarrytown Police Department arrived and pulled Officer Quinoy away from Mario Gomez.  Mario was handcuffed and taken into the police station.  The plaintiff followed her husband into the police station and waited with her children to receive additional information.

After waiting in the police station for approximately an hour, the plaintiff's pain worsened and her daughter, Haydee Gomez, took her to Phelps Memorial Hospital.  The plaintiff contends that she suffered a contusion of the left ribs and was given pain medication.  After leaving the hospital, the plaintiff returned to the Sleepy Hollow Police Station to pick up her husband's car.  At the station, Sergeant Hood asked if the plaintiff wanted to make a complaint, to which she responded "yes."  Officer Quinoy then came

4

into the lobby of the police station, handcuffed the plaintiff, and told her that he had no choice but to arrest her. The plaintiff contends that the report of the incident omits the fact that Officer Quinoy threw the plaintiff to the ground and arrested her four hours after the assault had ended.

### III. Applicable Law

A. <u>Motion to Dismiss and Motion for Summary Judgment</u>

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010). A motion to dismiss under Rule 12(b)(6) or 12(c) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). The parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." <u>Id.</u> The conversion is "governed by principles of substance rather than form. The essential inquiry is whether the [opposing party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." <u>In re G. & A. Books, Inc.</u>, 770 F.2d 288, 295 (2d Cir. 1985). Importantly, "[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion

for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." Id. In this case, because the parties have attached affidavits and transcripts of depositions to the motion, Rule 12(d) requires that it be treated as a motion for summary judgment.[4]

> Under Rule 56(c) of the Federal Rules of Civil Procedure,
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." Samuels v. Mockry, 77 F.3d 34, 36 (2d. Cir. 1996) (citing Celotex, 477 U.S. at 322).

However, as the United States Supreme Court noted in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), "Rule 56(e) itself provides that a party opposing a properly supported motion for

---

[4]Judge Robinson came to this conclusion in his memorandum decision and order consolidating the cases.

summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.   "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.   Summary judgment is not appropriate until after the non-moving party has had adequate time for discovery. Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993).   In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Qualified Immunity

Under federal law, the doctrine of qualified immunity shields officials from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Harlow v. Fitzgerald, 457 U.S. 800,

7

818 (1982).  Qualified immunity is an immunity from suit rather than a mere defense to liability; therefore, it protects officials from the burdens of litigation for the choices that they make in the course of their duties.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Notably, the defense of qualified immunity is available only to an official sued in his individual or personal capacity, and not to an official sued in his official capacity.  Kentucky v. Graham, 473 U.S. 159, 165-68 (1985).[5]

"A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no constitutional right was violated, the inquiry ends.  But if a violation could be established on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established.  Id.  The Second Circuit has further refined the second inquiry under Saucier: A government actor performing a discretionary task will be entitled to qualified immunity if either "(a) [his] action did not violate clearly established law, or (b)

---

[5]Kentucky v. Graham also states that a claim against a state or municipal official in his official capacity is treated as a claim against the entity itself.  Graham, 473 U.S. at 166.  Because the plaintiff in this case has asserted claims against The Village of Sleepy Hollow, the municipal entity, the claims against the officers in their official capacities are duplicative and can be dismissed.  See Baines v. Masiello, 288 F. Supp. 2d 376, 384 (W.D. N.Y. 2003).

it was objectively reasonable for [him] to believe that his action did not violate such law." _Johnson v. Newburgh Enlarged Sch. Dist._, 239 F.3d 246, 250 (2d Cir. 2001).   In 2009, the Supreme Court revisited the _Saucier_ two-step analysis and held that a federal court no longer has to adhere to the rigid order of analysis but may instead adopt an "order of decisionmaking that will best facilitate the fair and efficient disposition of each case." _Pearson v. Callahan_, 555 U.S. 223, 129 S. Ct. 808, 812 (2009).

## IV.   Discussion[6]

A.   Chief Warren, Lieutenant Hayes, Lieutenant Campbell, and Sergeant Hood

In their motion for summary judgment, the individual defendants argue that Chief Warren, Lieutenant Hayes, Lieutenant Campbell, and Sergeant Hood are entitled to qualified immunity because they were not present during the incident involving the plaintiff's husband, nor were they involved in the plaintiff's arrest and subsequent prosecution.   According to the defendants, even if a jury were to conclude that the police officers' collective use of force was objectively unreasonable, the plaintiff still has to prove that the individual defendants were "personally

_____

[6]In her response to the motion for summary judgment, the plaintiff states that she adopts the arguments set forth by her husband, Mario Gomez.   However, as this Court stated above, the facts and arguments presented by Awilda Gomez differ from those presented by her husband.   Thus, this Court discusses the legal arguments presented by the plaintiff, Awilda Gomez.

involved in order to recover damages against [them] for the use of excessive force." Thompson v. Tracy, No. 00 Civ. 8360, 2008 WL 190449, at *6 (S.D. N.Y. Jan. 17, 2008). The defendants highlight the fact that the plaintiff has admitted that Officer Quinoy was the only police officer that had any physical contact with her on October 17, 2006.

In response, the plaintiff contends that Chief Warren is not entitled to qualified immunity because he failed to act on information indicating that unconstitutional acts were occurring. Specifically, the plaintiff argues that Chief Warren faces supervisory liability. With regard to Lieutenant Campbell, the plaintiff argues that he is not entitled to qualified immunity because his report raises a question as to the existence of a policy or custom of failing to train police officers. The plaintiff also states that Sergeant Hood and Lieutenant Hayes are not entitled to qualified immunity, but she provides no argument in support of this contention.

1. <u>Chief Warren</u>

"The qualified immunity analysis depends upon an individualized determination of the misconduct alleged." <u>Poe v. Leonard</u>, 282 F.3d 123, 134 (2d Cir. 2002). A supervising police officer, such as Chief Warren, cannot be held liable under § 1983 for negligent supervision of his employees absent evidence that any employee acted outside the scope of his or her employment or that the supervisor knew or should have known of any employee's

10

misconduct.  <u>Newton v. City of New York</u>, 681 F. Supp. 2d 473, 494 (S.D. N.Y. 2010).  The plaintiff must establish the defendant's deliberate indifference by showing that "'the need for more or better supervision to protect against constitutional violations was obvious,' but that the defendant made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 127 (2d Cir. 2004) (quoting <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995)).  Further, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 886 (2d Cir. 1991)).

In this case, the plaintiff has failed to demonstrate such personal involvement by a supervisory defendant such as Chief Warren because she has not shown: (1) that Chief Warren personally participated in the alleged constitutional violation; (2) that he was grossly negligent in supervising subordinates who committed the wrongful acts; or (3) that he exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring.  <u>See</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).  The plaintiff acknowledges that Chief Warren was not present during the incident involving her husband and she admits that Chief Warren did not touch her or her husband. (A. Gomez Dep. 176.)  Moreover, the

plaintiff has not set forth any facts to support a claim that Chief Warren was grossly negligent or deliberately indifferent. The plaintiff makes a vague reference to Chief Warren "condoning [Officer] Quinoy's known behavior and permitting it to continue[,]" but she offers no facts in support of this allegation. (Resp. to Mot. for Summ. J. 15-16.) Even if Chief Warren ignored the plaintiff when she was in the hospital, this does not rise to the level of a violation of the plaintiff's constitutional rights. (A. Gomez Dep. 177-78.)

Construing all facts and drawing all reasonable inferences in the plaintiff's favor, this Court concludes that she has failed to proffer sufficient evidence to raise a triable issue regarding Chief Warren's liability.

    2.  <u>Lieutenant Hayes</u>

The defendants argue that Lieutenant Hayes is entitled to qualified immunity because he was not present during the incident involving the plaintiff's husband and he was not involved in the plaintiff's arrest. In response to the motion for summary judgment, the plaintiff does not address qualified immunity as to Lieutenant Hayes, she merely states that Lieutenant Hayes ignored her. (Resp. to Mot. for Summ. J. 14.)

A police officer "has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988). Failure to intercede to prevent an

unlawful arrest can be grounds for § 1983 liability.  Id.  However, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) (quoting Harlow, 457 U.S. at 818).  Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights.  Anderson v. Creighton, 483 U.S. 635, 641 (1987).  To obtain summary judgment on qualified immunity grounds in connection with a claim of failure to intercede, a defendant must show that the only result a fair jury could reach is that reasonably competent police officers, faced with the information available to the non-intervening officer at the time of the arrest, could disagree about the legality of the arrest.  Ricciuti, 124 F.3d at 129 (citing Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995)).

In this case, reasonable officers in Lieutenant Hayes' position could disagree about the legality of the actions of the other officers.  Lieutenant Hayes was not present outside the police station when Mario Gomez was being assaulted.  The only information that Lieutenant Hayes had regarding the assault came from the plaintiff, who ran into the police station on multiple occasions seeking help.  There is no evidence that Lieutenant Hayes was aware of the events leading up to Mario Gomez's arrest or the

specifics of what was happening outside the police station on
October 17, 2006.  In fact, the plaintiff admits that she does not
know Lieutenant Hayes and has never heard of him.  (A. Gomez Dep.
87.)  Given the fact that Lieutenant Hayes' had no first-hand
knowledge of the incident, and his only connection to the assault
was his presence inside the nearby station, this Court concludes
that it was not objectively unreasonable for Lieutenant Hayes to
refuse to intercede.  Lieutenant Hayes had no way of knowing
whether his fellow officers were violating Mario Gomez's
constitutional rights, and his refusal to answer the plaintiff's
requests for help do not amount to a violation of her
constitutional rights, so he is entitled to qualified immunity.

     3.   <u>Lieutenant Campbell</u>

    Like Lieutenant Hayes, Lieutenant Campbell, according to the
defendants, was neither present during the incident involving the
plaintiff's husband nor involved in the plaintiff's arrest.  In
response, the plaintiff contends that Lieutenant Campbell's report
was inadequate and raises a question as to his diligence in seeking
the truth.  (Resp. to Mot. Summ. J. 16.)

    Viewed in the light most favorable to the plaintiff, the facts
alleged do not show that Lieutenant Campbell's conduct violated a
constitutional right.  <u>See</u> <u>Saucier</u>, 533 U.S. at 200-01.  Even if
Lieutenant Campbell did compile an inadequate report, this fact
alone is hardly sufficient to support the plaintiff's contention
that Lieutenant Campbell is not entitled to qualified immunity.

Significantly, the plaintiff acknowledges that she does not know
Lieutenant Campbell, that he never touched her, and that her
attorney advised her not to speak with him about the investigation.
(A. Gomez Dep. 136, 138, 170-71.)  The plaintiff's belief that
Lieutenant Campbell did not care about her well-being is not
sufficient to support a claim that he violated her constitutional
rights.  (A. Gomez Dep. 171.)  For these reasons, this Court finds
that Lieutenant Campbell is entitled to qualified immunity.

    4.   <u>Sergeant Hood</u>

The defendants argue that Sergeant Hood, like the officers
discussed above, is entitled to qualified immunity because he was
not involved in the incident involving Mario Gomez or the
plaintiff's arrest and subsequent prosecution.  The plaintiff
counters that Sergeant Hood is not entitled to qualified immunity,
but offers no explanation as to why.

In his response to the defendants' motion for summary
judgment, Mario Gomez indicates that he does not oppose the
granting of qualified immunity as to Sergeant Hood.  The plaintiff
in this case admits that she never saw Sergeant Hood before or
after the October 17, 2006 incident, he never touched her, and he
never talked to her.  (A. Gomez Dep. 172.)  In fact, during her
deposition testimony, the plaintiff expresses confusion over the
identity of Sergeant Hood, as well as his involvement in the
incident, if any.  Mario Gomez's acknowledgment, combined with the
plaintiff's failure to set forth any argument as to why Sergeant

Hood should not be entitled to qualified immunity, entitles Sergeant Hood to qualified immunity.

B.   Officer Gasker & Officer Ebel

The plaintiff argues that Officer Gasker and Officer Ebel should be held liable for refusing to intervene to prevent the use of excessive force.  The defendants, however, argue that it was objectively reasonable for Officers Gasker and Ebel to believe that their actions did not violate any clearly established constitutional right of the plaintiff.  Further, the defendants contend that the plaintiff admits that Officer Gasker and Officer Ebel did not touch her in any way.

As described above, a police officer does have a duty to intercede on behalf of a citizen whose constitutional rights are being violated by other officers.  Ricciuti, 124 F.3d at 129.  But "the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights."  Id. (citing Creighton, 483 U.S. at 641).  This Court finds that reasonably competent police officers, faced with the information available to Officer Gasker and Officer Ebel at the time of Mario Gomez's arrest, could disagree about the legality of the arrest.  See Lennon, 66 F.3d at 420-21.

Even assuming the plaintiff's version of the events to be true, her own testimony confirms that there was probable cause to arrest her husband.  The plaintiff confirms that Mario held onto

and wrestled with Officer Quinoy.  (A. Gomez Dep. 98-99.)  The plaintiff also admits that during the altercation outside of the police station, she held Officer Quinoy's shirt.  (A. Gomez Dep. 101-02.)  Mario's resistance and Awilda's interference in the arrest justifies Officer Gasker's and Officer Ebel's refusal to intervene.  Importantly, the plaintiff has presented almost no evidence detailing the participation of Officers Gasker and Ebel in the events of October 17, 2006.  When describing the assault, the plaintiff alleges that Officers Gasker and Ebel used a taser on her husband, but she admits that they never touched her.  (A. Gomez 158, 164.)  The plaintiff emphasizes that her claims against these officers spring from the emotional impact that the events of that night have had on her.  For these reasons, Officer Gasker and Officer Ebel are entitled to qualified immunity.

C.   <u>Officer Quinoy</u>

Lastly, this Court considers the plaintiff's claims against Officer Quinoy.  Awilda Gomez alleges that Officer Quinoy picked her up by her jacket and threw her to the ground.  According to the plaintiff, any reasonably competent police officer would have known that it was unreasonable to use that degree of force.  The plaintiff also claims that Officer Quinoy falsely arrested her four hours after the incident in order to "cover his ass."  (A. Gomez Dep. 122.)  In their motion for summary judgment, the defendants argue that Officer Quinoy's use of force was reasonable considering

the circumstances.  The defendants do not address the arrest of Awilda Gomez.

The Fourth Amendment prohibits the use of excessive force by a police officer in the course of effecting an arrest.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  Because the Fourth Amendment test for excessive force is a test of reasonableness, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake."  Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Town of W. Hartford, 361 F.3d at 123).  In conducting that balancing, the Court must consider at least three factors: "(1) the nature and severity of the crime leading to the arrest; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  Id. at 96 (citing Graham, 490 U.S. at 396).  The Court must evaluate the record "from the perspective of a reasonable officer on the scene" and must make "allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 387; 396-97.  The relevant inquiry for the excessive force claim is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier,

533 U.S. at 202.  As the Supreme Court has stated, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Officers enjoy qualified immunity on a false arrest claim if "it was objectively reasonable for [them] to believe that probable cause existed" or if "officers of reasonable competence could disagree on whether the probable cause test was met."  Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Viewing the facts in the light most favorable to the plaintiff, this Court finds that Officer Quinoy is not entitled to qualified immunity.  It is well established "that use of force is contrary to the Fourth Amendment it if is excessive under objective standards of reasonableness."  Saucier, 533 U.S. at 201-02.  This Court finds that any reasonable officer placed in Officer Quinoy's shoes would have recognized that Officer Quinoy's actions were unlawful.

In evaluating the particular circumstances of this case, this Court considers the factors set forth in Graham.  Although the plaintiff admits to holding Officer Quinoy's arm while trying to convince him to stop his hitting her husband, picking up the plaintiff and throwing her was unjustified and unreasonable.  There is no indication from the facts presented that Awilda Gomez posed any threat to officer safety, nor is there any justification for

19

her arrest.   Under objective standards of reasonableness, this Court finds that Officer Quinoy's use of force was excessive, it was objectively unreasonable to believe that probable cause existed for the plaintiff's arrest, and that he violated clearly established law.  Thus, Officer Quinoy is not entitled to qualified immunity.

D.   <u>Malicious Prosecution and False Imprisonment</u>

In her complaint, the plaintiff also states claims for malicious prosecution and false imprisonment.  These claims, however, are not addressed in the plaintiff's response to the motion for summary judgment.  Although the plaintiff seems to have abandoned these claims, this Court addresses them nonetheless.

The Second Circuit has held: "'To state a claim . . . for malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice.'"   <u>Droz v. McCadden</u>, 580 F.3d 106, 109 (2d Cir. 2009) (quoting <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143 (2d Cir. 2003)).

In this case, the plaintiff has failed to set forth any details in support of the malicious prosecution claim.  The complaint states that the plaintiff was "maliciously prosecuted in violation of his civil rights," but it does not state what charges were brought against her or whether there was a criminal proceeding

20

against her.  (Compl. ¶ 49.)  Further, the plaintiff does not argue whether there was probable cause for the proceeding, or that it was initiated with malice.   The malicious prosecution claim is not discussed at all in the plaintiff's response to the motion for summary judgment.  Given the lack of evidence, this Court finds that there is no genuine issue of material fact with regard to the claim for malicious prosecution.  Thus, summary judgment must be granted to the individual defendants on this claim.

The plaintiff's third cause of action is false imprisonment. This Court first notes that the terms false arrest and false imprisonment are virtually synonymous.  See Dale v. Kelley, 908 F. Supp. 125, n. 1 (W.D. N.Y. 1995), aff'd, 95 F.3d 2 (2d Cir. 1996). Because this Court has already addressed, in depth, the plaintiff's claims for false arrest and because the plaintiff presents no facts in support of a separate claim for false imprisonment, it finds no need to discuss separately the claim of false imprisonment.

E.   State Law Negligence Claim

The plaintiff's seventh cause of action is a state law negligence claim against the defendants.   According to the plaintiff, the defendants were grossly negligent in their purposeful and intentional violation of their duty of care towards the plaintiff under the laws of the State of New York.  (Compl. ¶ 73.)  Neither the plaintiff nor the defendants further address this claim in the pleadings on the motion for summary judgment.

This Court first notes that it may exercise supplemental jurisdiction over the plaintiff's state law negligence claim, as it arises from the same nucleus of operative facts as the § 1983 causes of action.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) (citing Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).  A negligence claim will survive summary judgment when a plaintiff alleges facts that establish that the defendant had a duty to protect the plaintiff, the defendant breached that duty, and that breach caused the plaintiff to be injured.  See Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002).

In this case, this Court finds that the plaintiff has failed to allege any facts in support of her negligence claim.  The complaint states that the defendants' concerted actions were recklessly indifferent and shocking to the conscience, but provides no further details.  (Compl. ¶ 73.)  As previously mentioned, this claim is not addressed in the pleadings on the motion for summary judgment.  For these reasons, summary judgment must be granted as to the plaintiff's state law negligence claim.

## V.  Conclusion

For the reasons stated above, the defendants' motion for summary judgment is GRANTED in PART and DENIED in PART.  Summary judgment is granted as to Officer Ebel, Officer Gasker, Lieutenant Campbell, Lieutenant Hayes, Sergeant Hood, and Chief Warren.  Summary judgment is denied as to Officer Quinoy.  Accordingly, only

the Village of Sleepy Hollow, Officer Quinoy, and police officers John Does 1-4 remain defendants in this case.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    July 5, 2011


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
Sitting by Designation